IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **JARROD RUTLEDGE,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **V.** | § | Civil Action No. _____ |
| | § | Admiralty |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
|     **Defendant** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### A. PARTIES

1.  Plaintiff, JARROD RUTLEDGE ("Rutledge" or "Plaintiff"), is an individual who at all times material to this lawsuit has resided in Port Arthur, Texas, and been a citizen of the State of Texas.

2.  Defendant, THE UNITED STATES OF AMERICA ("United States" or "Defendant"), may be served by delivering a copy of the Summons and the Complaint to the following persons:

    Hon. Brit Featherston
    Acting U.S. Attorney
    Eastern District of Texas
    350 Magnolia Ave., Suite 150
    Beaumont, TX 77701

    Hon. Jeff Sessions
    Attorney General of the United States
    950 Pennsylvania Avenue, NW
    Washington, DC 20530-0001

> Joel Szabat, Executive Director (Acting Administrator)
> Maritime Administration
> 1200 New Jersey Avenue
> SE Washington DC, 20590

## B.  JURISDICTION

3. The Court has jurisdiction over this lawsuit under 28 USC §1333 because the suit involves admiralty and maritime jurisdiction.

4. The Court has jurisdiction because the suit arises under 46 USC §§30901, et seq., the Suits in Admiralty Act, and 46 USC §§31101, et seq., the Public Vessels Act.

5. Venue is proper in this district under 46 USC §30906(a)(1) because Plaintiff resides in this district. Venue is also proper under 46 USC §30906(a)(2) and 46 USC §31104, because the Vessel is maintained in this district at the time this suit is filed.[1]

## D.  FACTS AND WAIVER OF IMMUNITY

6. On or about August 23, 2015 ("Date in Question"), at approximately 4:00 pm. (1600 hours), Plaintiff was employed as a line handler, contracted through Associated Marine and/or International Divers Co., Inc., to assist in the mooring of the FSS Pollux ("Vessel").

7. The Vessel was a public vessel, owned by the United States, and part of the National Defense Reserve Fleet ("NDRF"), which was established by the Merchant Ship Sales Act of 1946, and is part of the Maritime Administration

---

[1] See "Exhibit A," National Reserve Fleet Inventory, MAR-612: Reserve Fleet Management System Monthly Report as of March 31, 2017 (03/31/2017), at page 9/17.

("MARAD"), a part of the Department of Transportation ("DOT") of the United States.

8. At all times material to this lawsuit, the United States, acting through MARAD, had contracted with Keystone Ocean Services, Inc. ("Keystone"), to provide the crew of the Vessel.

9. All employees of Keystone working on the Vessel at the time of the Incident complained of herein were, for the purposes of this lawsuit, employees of the United States at the time of the Incident, working in the course of

10. On the Date in Question, Plaintiff was on a break from his duties and the heat of the day, and he was walking to an area designated for Plaintiff and his coworkers to cool off and drink water. Ronald Kitlas ("Kitlas"), an Electrician employed by Keystone as a member of the crew of the Vessel, was using a stern-mounted capstan to pull in a spring line, under the supervision of Bruce Bonnecarrere ("Bonnecarrere"), the Chief Mate employed by Keystone as a member of the crew of the Vessel. The spring line became trapped or pinched on an object on the deck as it was being pulled in. Bonnecarrere was not in a position to observe the spring line being trapped or pinched, because he had positioned himself away from the area. Kitlas continued pulling in the spring line, creating a substantial amount of tension on the line. Instead of releasing the tension on the line so that the line could be freed, Kitlas continued pulling the line in with the capstan, creating sufficient tension on the line to the point where it broke free. When the spring line broke free, it snapped with such force that it struck Plaintiff on the left leg, shattering the bones of his left leg, and

causing the damages complained of herein. This series of events is referred to herein as "the Incident."

11. At all times material to this lawsuit, the United States, acting through its agent, Keystone Ocean Services, Inc., maintained control of the Vessel, including but not limited to the deck of the Vessel, and the capstan and spring line involved in the Incident.

12. At the time of the Incident, the Vessel was moored and in the navigable waters, and therefore in navigation, at the MARAD Layberth Facility in or near Orange, Texas. Such location is within the Beaumont Division of the Eastern District of Texas.

13. Pursuant to the Suits in Admiralty Act, and the Public Vessels Act, the United States is the exclusive defendants for all claims against the vessel arising out of the Incident, including but not limited to claims against members of the crew of the Vessel, who were employees of Keystone working under contract to the United States.

14. The United States has waived sovereign immunity pursuant to the Suits in Admiralty Act and Public Vessels Act.

### E. COUNT 1 – LIABILITY UNDER 33 USC §905(b)

15. Plaintiff restates and sets forth all of the allegations of paragraphs 1-14.

16. The United States is liable to Plaintiff pursuant to 33 USC §905(b), the Suits in Admiralty Act, and the Public Vessels Act, for the negligence of the vessel, which includes the negligence of the crew of the vessel.

17. Plaintiff states that at the time of the Incident, the United States and its agents, and specifically, the crew of the Vessel, including but not limited to Keystone, Klitsas, and Bonnecarrere, were negligent in the following particulars:

   a. Failing to provide a sufficient number of crew to perform the task being performed by Klitsas and Bonnecarrere;

   b. Failing to properly train Klitsas and Bonnecarrere;

   c. Pulling in a line without proper monitoring and flagging;

   d. Failing to properly monitor and observe the condition of the line as it was being pulled in, to notice that it was trapped;

   e. Failing to properly maintain the area of the deck where the line was being pulled in clear of obstructions;

   f. Failing to warn Plaintiff that he was entering an area where there was a line being pulled in without proper monitoring and flagging;

   g. Failing to adequately mark areas of the deck where workers such as Plaintiff were not permitted to walk.

18. Each of the foregoing acts or omissions constituted negligence of the Vessel and its crew, and therefore of the United States, which played a part or was a proximate cause of the injuries and damages sustained by Plaintiff.

### F.  COUNT 2 – UNSEAWORTHINESS OF VESSEL

19.     Plaintiff restates and sets forth all of the allegations of paragraphs 1-17.

20.     Plaintiff states that such conduct as set forth in paragraphs 14-17, in addition to constituting the negligence of the vessel and its crew, such conduct rendered the vessel unseaworthy in its crew.

21.     Further, the appurtenances of the vessel were unseaworthy, and specifically the capstan was mounted in a location where the area from which lines were pulled in were not within the visibility of the operator of the capstan.

22.     The unseaworthiness of the vessel was a proximate cause of the injuries and damages sustained by Plaintiff.

23.     Plaintiff is entitled to bring an action against the United States under the general maritime law, the Public Vessels Act, and the Suits in Admiralty Act, for the unseaworthiness of the vessel.

### G.  COUNT 3 – NEGLIGENCE UNDER GENERAL MARITIME LAW

24.     Plaintiff restates and sets forth all of the allegations of paragraph 1-22.

25.     Plaintiff states that such conduct as set forth in paragraphs 14-17, in addition to constituting the negligence of the vessel and its crew under 33 USC §905(b), such conduct is also actionable under the general maritime law of the United States, pursuant to the Public Vessels Act and/or the Suits in Admiralty Act.

## H.  DAMAGES

26. As a direct and proximate result of the negligence of the United States and its agents, including but not limited to Keystone, Klitsas, and Bonnecarrere, and the unseaworthiness of the Vessel, Plaintiff has suffered in the past, and in reasonable probability will suffer in the future, the following elements of damages:

   a. Reasonable and necessary medical expenses;

   b. Loss of earnings and earning capacity;

   c. Physical pain and suffering;

   d. Mental anguish;

   e. Physical impairment; and

   f. Disfigurement

27. Plaintiff sues the United States for the full amount of his damages.

## I.  CONDITIONS PRECEDENT

28. All conditions precedent to this suit have been performed or have occurred.

## J.  PRAYER

29. For the reasons set forth above, Plaintiff asks for judgment against the United States for the following:

   a. Actual damages, in an amount that is within the jurisdiction of this Court, which is just and fair and which fully compensates Plaintiff for his injuries, but will not exceed $1,000,000.00;

   b. Prejudgment and post-judgment interest;

    c. Costs of suit;

    d. All other relief deemed appropriate, just, and fair by the Court.

Respectfully submitted,

TERRY BRYANT PLLC

By:   */s/ Steve Waldman*
    Steve Waldman
    TEXAS STATE BAR NO: 20679550
    8584 Katy Freeway, Suite 100
    Houston, Texas 77024
    Telephone: (713) 973-8888
    Fax: (713) 973-1188
    Email: swaldman@terrybryant.com

ATTORNEY FOR PLAINTIFF